01
02
03
04
05
06
07          UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
08                    AT SEATTLE

09  WILLIAM MICHAEL KRAL,            )
                                     )     CASE NO. C10-1360-MAT
10          Plaintiff,               )
                                     )
11          v.                       )     ORDER RE: PENDING
                                     )     MOTIONS FOR SUMMARY
12  KING COUNTY, et al.,             )     JUDGMENT
                                     )
13          Defendants.              )
    _____)

14

15                          <u>INTRODUCTION</u>

16          Plaintiff William Michael Kral brings this action against King County and Washington

17  Association of Sheriffs and Chiefs of Police (WASPC) alleging violation of the Americans with

18  Disabilities Act (ADA) and Washington's Law Against Discrimination (WLAD).   (Dkt. 10.)

19  Plaintiff, who is deaf, alleges discrimination through the refusal to provide him with an

20  interpreter and other auxiliary aids and services necessary to allow him to participate in the

21  electronic home monitoring (EHM) portion of his criminal sentence.

22  / / /

01    Defendants move for summary judgment. (Dkts. 38 & 43) and plaintiff moves for

02 partial summary judgment (Dkt. 42).   Having considered the pending motions and all materials

03 filed in support and in opposition, as well as the remainder of the record, the Court finds

04 defendants entitled to summary judgment in relation to plaintiff's WLAD claim, while

05 concluding plaintiff's ADA claim presents outstanding issues and material factual disputes

06 precluding summary judgment.

07                                          BACKGROUND

08    Plaintiff was cited for Driving Under the Influence (DUI) in King County on November

09 28, 2004, and arraigned on August 18, 2005.   (Dkt. 39, Ex. 1.)   He was subsequently arrested,

10 convicted, and served time in Benton County in relation to another DUI.   (*Id*.; Dkt. 46, Ex. 1

11 (Kral Dep. at 74-45).)   Thereafter, on June 13, 2007, King County District Court entered a

12 commitment upon sentence and plaintiff began to serve his sentence in relation to his

13 November 2004 arrest.   (Dkt. 39, Ex. 1.)

14    Following the filing of a motion to resentence by counsel, King County District Court

15 Judge Elizabeth D. Stephenson issued an August 2, 2007 Order on Judgment and Sentence for

16 the Crime of DUI.   (*Id*., Exs. 2 & 3.)   The order provided for a 365 day sentence, with 155

17 days suspended, 90 days to be served in jail (with credit for 42 days already served), and 120

18 days to be served on EHM "with breathalyzer[.]"   (*Id*., Ex. 3.)   The order also authorized an

19 interpreter for Victim Information Panel sessions.   (*Id*.)

20    Upon court order, King County provides EHM as a sentencing alternative to complete

21 confinement through the Department of Adult and Juvenile Detention (DAJD) Community

22 Corrections Division (CCD).   (Dkt. 40, ¶¶3-5.)   King County defendants or probationers

ordered to have alcohol monitoring while on EHM "must independently find their own method of getting the alcohol monitoring accomplished" which "usually happens by the client working with his or her probation officer, who can tell the defendant which company(ies) the ordering Court is most likely to approve to provide that service." (*Id.*, ¶14.) The only alcohol monitoring provided by King County entails the use of a handheld device – the "Sobrieter" – at the work release facility offices of the CCD. (*Id.*, ¶10.) While CCD does not provide the Sobrieter for at-home use with EHM, "it is possible that a court could order that a defendant on EHM come in to the office for breath alcohol testing" using the device on a scheduled basis. (*Id.*, ¶¶11-12.) In this instance, there is no record of contact between plaintiff and the CCD as to placement in King County's EHM program. (*Id.*, ¶6.)

Plaintiff did discuss EHM with WASPC. (Dkt. 49 at 2.) WASPC is designated by RCW § 36.28A.010 as a "combination of units of local government." (Dkt. 45, ¶3.) WASPC is made up of representatives from local, state, tribal, and federal law enforcement, and facilitates the provision of law enforcement services to law enforcement agencies. (*Id.*, ¶4.) One of WASPC's services includes establishing and vetting relationships with third party vendors to provide correctional services like EHM and alcohol monitoring, and acting as the "contact point" for the vendor and various law enforcement agencies in Washington State. (*Id.*, ¶¶5-7.)

On or about August 10, 2007, Dale McMillan, a WASPC case manager, received notice from King County District Court identifying plaintiff as a candidate for EHM. (Dkt. 44, ¶4.) At that time, WASPC contracted with Behavioral Interventions, Inc., a Colorado company, for EHM services, and with Sentencing Alternatives, a division of Control Station Security

Systems, Inc. and a California company, for alcohol monitoring.  (*Id*., ¶¶5-6; Dkt. 45, ¶¶8-9.)

At the time at issue in this case, the EHM provided by the vendor involved an ankle bracelet and transmitter connected to a phone line, while the alcohol monitoring involved a video camera, breathalyzer, and random telephone communications between the vendor's operator and the offender.  (Dkt. 44, ¶¶5-6.)  The operator would call the offender and provide instructions as to where and how to stand in front of the video camera and blow into the breathalyzer unit, and the offender would show the results to the operator via the video camera.  (*Id*., ¶6.)  With the alcohol monitoring provided, the vendor's operator makes telephone calls and performs tests with the offender, while WASPC provides the vendor's equipment, monitors the results, and reports the results to the court.  (Dkt. 45, ¶7.)

McMillan met with plaintiff at Kent Regional Justice Center on or about August 10, 2007 and communicated with him through written notes.  (Dkt. 44, ¶¶7-8 and Ex. 1.) McMillan informed plaintiff he would have to have someone at home to take two phone calls a day for alcohol monitoring.  (*Id*., ¶8 and Ex. 1 at 1-4.)  McMillan indicated he could schedule to have the test performed at the same times every day, but added that the calls could come fifteen minutes before to forty-five minutes after the scheduled time.  (*Id*., ¶8 and Ex. 1 at 2-3.) Plaintiff conveyed that he would try to arrange to have someone in his family assist with the monitoring and gave McMillan his mother's name and phone number. (*Id*., Ex. 1 at 4-6.)

McMillan attests that, upon returning to his office and contacting Sentencing Alternatives, he was told they did not offer other equipment or options to accommodate plaintiff.  (*Id*., ¶9.)  McMillan further attests that he "discussed the [EHM] program and its requirements with [plaintiff's] family members[,]" and that plaintiff's mother, Ann Godejohn,

01 initially indicated her willingness to be present for and assist with the alcohol monitoring phone

02 calls. (*Id.*, ¶10.)

03       McMillan again met with plaintiff to discuss the EHM and alcohol monitoring. (*Id.*,

04 ¶11.) Notes of that conversation show McMillan reiterated the alcohol monitoring process and

05 asked plaintiff to have his mother or another person call him to make arrangements. (*Id.*, Ex.

06 2.) McMillan declares that plaintiff's mother ultimately told him she was no longer interested

07 in helping plaintiff with the alcohol monitoring, and that he did not hear from anyone else on

08 behalf of plaintiff. (*Id.*, ¶13.) On August 27, 2007, McMillan sent a fax to King County

09 District Court stating:

10       William Kral is deaf and will not be able to be put on EHM with BAC for that
      reason. The testing operators have to physically talk to him every time they
11       call. His people at his home are not welling [sic] to be at home during the test
      times.
12
      He is still at the RJC.
13

14 (*Id.*, Ex. 3.)

15       Godejohn attests that she received a document from King County District Court with

16 contact information for WASPC in regard to plaintiff's participation in EHM and shortly

17 thereafter spoke with McMillan. (Dkt. 62-1 at 2.)[1] Godejohn maintains she explained to

18 _____

19     1 WASPC moves to strike a declaration provided by Godejohn and portions of a declaration
provided by plaintiff. (Dkt. 52.) The request to strike Godejohn's declaration because it is unsigned
20 was made moot by plaintiff's submission of a signed declaration. (*See* Dkt. 62.) Also, contrary to
WASPC's contention, the content of the declarations of both Godejohn and plaintiff are relevant and, in
most respects, supported by sufficient foundation. *See* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it
21 has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the
fact is of consequence in determining the action.") and Fed. R. Evid. 602 ("A witness may testify to a
22 matter only if evidence is introduced sufficient to support a finding that the witness has personal
knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own

01 McMillan that she would not be able to assist plaintiff with the alcohol monitoring because she

02 would not be home with him due to her need to work. (*Id*.) Godejohn attests that she

03 suggested possible accommodations for plaintiff, including the use of a video phone, a bracelet

04 such as that used by the actress Lindsay Lohan, and text messaging. (*Id*. at 2-3.) Plaintiff

05 likewise contends that he at some point suggested the use of the "SCRAM (continuous alcohol

06 monitoring)" bracelet used by Lohan. (Dkt. 49 at 2-3.) Godejohn also states that she

07 contacted both the Northwest Deaf Addiction Center in Vancouver, Washington, and Clark

08 County Washington District Court to obtain information about deaf individuals on EHM and

09 alcohol monitoring. (Dkt. 62-1 at 3.) She adds that, in a final phone call with McMillan, she

10 asked whether WASPC "would send Mike back to court to ask if they would remove the

11 alcohol testing requirement." (*Id*. at 3-4.)

12 Judge Stephenson held a review hearing on September 13, 2007. (Dkt. 39, Ex. 5.)

13 Plaintiff requested and was denied the use of interpreter services for EHM by the court. (Dkt.

14 49 at 3.) Judge Stephenson issued an order stating plaintiff was "going to research options re:

15 breathtesting when he is on EHM and out of custody." (Dkt. 39, Ex. 5; case of text altered.)

16 However, instead of participating in EHM, plaintiff proceeded to serve the final 120 days of his

---

17 testimony.") *See also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a
18 motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.") WASPC also moves to strike the bulk of both declarations as containing inadmissible hearsay. The Court finds insufficient
19 support for the assertion of hearsay as it relates to Godejohn's and plaintiff's contentions that they requested various forms of accommodation. *See generally* Fed. R. Evid. 801 (defining hearsay);
20 *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (finding much of the evidence presented "not hearsay" and "within the deponent or declarant's personal knowledge[,]" and
21 concluding that "even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial.'") It otherwise finds it
22 unnecessary, for the purpose of resolving the pending motions for summary judgment, to consider any statements Godejohn and plaintiff attribute to McMillan or others.

01  sentence in custody.

02      Plaintiff filed a claim for damages with King County on August 16, 2010. (Dkt. 39 at

03  85-93). In so doing, he alleged WASPC and King County refused to provide services for

04  EHM because he is deaf, and that "Judge Stephenson refused to amend the order to make it deaf

05  friendly and refused to allow me to use interpreters to be able to participate in EHM." (*Id*. at

06  86, 93.) Plaintiff thereafter filed his Complaint in this matter, seeking monetary and

07  declaratory relief. (Dkt. 10.)

08                                    <u>DISCUSSION</u>

09      Summary judgment is appropriate when a "movant shows that there is no genuine

10  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

11  R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the

12  nonmoving party fails to make a sufficient showing on an essential element of his case with

13  respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

14  (1986). The Court must draw all reasonable inferences in favor of the nonmoving party.

15  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

16      The central issue is "whether the evidence presents a sufficient disagreement to require

17  submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

18  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the

19  initial burden of showing the district court "that there is an absence of evidence to support the

20  nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The moving party can carry its

21  initial burden by producing affirmative evidence that negates an essential element of the

22  nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed

01  to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

02  *Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).   The burden then shifts to the nonmoving party to

03  establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

04      In supporting a factual position, a party must "cit[e] to particular parts of materials in

05  the record . . .; or show[] that the materials cited do not establish the absence or presence of a

06  genuine dispute, or that an adverse party cannot produce admissible evidence to support the

07  fact."  Fed. R. Civ. P. 56(c)(1).   The nonmoving party "must do more than simply show that

08  there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475

09  U.S. at 585.   "[T]he requirement is that there be no *genuine* issue of material fact.  . . . Only

10  disputes over facts that might affect the outcome of the suit under the governing law will

11  properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247-48 (emphasis

12  in original).   "The mere existence of a scintilla of evidence in support of the non-moving

13  party's position is not sufficient[]" to defeat summary judgment.  *Triton Energy Corp. v.*

14  *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).   Nor can the nonmoving party "defeat

15  summary judgment with allegations in the complaint, or with unsupported conjecture or

16  conclusory statements."  *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir.

17  2003).

18      All three parties in this matter move for summary judgment, in whole or in part.   The

19  Court first considers some preliminary arguments raised by defendants, and thereafter

20  addresses plaintiff's claims under the ADA and WLAD.

21  A.    Judicial Immunity

22      Defendants maintain this action is barred by judicial immunity.   Claims for monetary

damages against judges are barred by absolute judicial immunity. *Mireles v. Waco*, 502 U.S. 9, 9-12 (1991). *Accord Schucker v. Rockwood,* 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam) ("Judges are absolutely immune from damages actions for judicial acts taken within the jurisdiction of their courts.") (citation omitted). "A judge loses absolute immunity only when he acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature." *Schucker,* 846 F.2d at 1204 (citations omitted).

Defendants contend that the decision to allow plaintiff to participate in EHM, a sentencing alternative to confinement in jail, and the decision to deny a request for the assistance of an interpreter in the September 2007 hearing are discretionary judicial decisions protected by absolute judicial immunity. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (judicial immunity applied to state court judge's decision to deny deaf party's request for videotext display). Noting plaintiff's inability, in his deposition, to point to any person other than Judge Stephenson as violating his civil rights based on his disability (Dkt. 39, ¶ 9 and Ex. 7 (Kral Dep.) at 192-234), King County reasons it should be dismissed from this suit. WASPC adds arguments that, as an agent carrying out the court's instructions, it is entitled to the same immunity as the judge, *see*, *e.g.*, *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 126-27, 829 P.2d 746 (1992) (quasi-judicial immunity of hearing examiner and county council extended to county), and that it cannot be held liable for the judicial conduct of a District Court Judge, who is a state, not a county actor, *see* Wash. Const. Art. IV, § 1 and RCW 3.30.030; *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994) ("Because Judge Travis was functioning as a state judicial officer, his acts and omissions were not part of a city policy or custom. A municipality cannot be liable for judicial conduct it lacks the power to require,

01  control, or remedy, even if that conduct parallels or appears entangled with the desires of the

02  municipality.")

03          Defendants' reliance on judicial immunity as a barrier to this suit is misplaced.

04  Defendants do not present evidence supporting the conclusion that Judge Stephenson denied

05  plaintiff the opportunity to participate in EHM.   Judge Stephenson sentenced plaintiff to EHM

06  and it is apparent from the plain language of her September 2007 order that she fully intended

07  plaintiff to participate in that sentencing alternative.   (Dkt. 39 at Ex. 3 and Ex. 5 ("Def is going

08  to research options re: breathtesting *when he is on EHM* and out of custody.") (case of text

09  altered and emphasis added).)

10          Nor does the outcome of the September 2007 hearing otherwise end the inquiry into

11  accommodation.   First, while acknowledging the District Court's denial of his request for an

12  interpreter to assist in EHM (*see* Dkt. 49 at 3), plaintiff alleges that both WASPC and King

13  County denied him the opportunity to participate in EHM based on his disability.   (*See*, *e.g.*,

14  Dkt. 10 and Dkt. 39 at 71-81, 86.)   Moreover, as stated by the Ninth Circuit, "the possibility

15  that an individual judge might refuse to order, or even permit, an accommodation . . . in a

16  particular case would not absolve the County [or some other public entity] of [the]

17  responsibility to attempt to comply with the ADA."   *Duvall*, 260 F.3d at 1141 n.15 (rejecting

18  argument that a county and other named defendants may not be held liable for a failure to

19  accommodate a hearing impaired litigant because a judge rejected a requested accommodation

20  of using a videotext display in a court proceeding).   For this reason, and for the reasons stated

21  above, defendants fail to establish that plaintiff's inability to participate in EHM resulted from a

22  judicial act entitling defendants to immunity.

01 B.     Rooker-Feldman Doctrine

02      Defendants also argue that the Court lacks jurisdiction over this matter under the

03 *Rooker-Feldman* doctrine.    The *Rooker-Feldman* doctrine prevents federal courts from

04 second-guessing state-court decisions by barring lower federal courts from hearing de facto

05 appeals from state-court judgments.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923);

06 *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Carmona v. Carmona*, 603 F.3d 1041,

07 1050 (9th Cir. 2010).

08      Defendants argue that consideration of plaintiff's claims would require this Court to

09 consider invalidating Judge Stephenson's decision regarding plaintiff's sentence and her

10 decision to deny the appointment of an interpreter for plaintiff's use of EHM, thereby

11 implicating the *Rooker-Feldman* doctrine.   They note that it is immaterial to this analysis that

12 plaintiff pursues claims under the ADA.  *See Dale v. Moore*, 121 F.3d 624, 627-28 (11th Cir.

13 1997) ("[T]he ADA does not provide an independent source of federal court jurisdiction that

14 overrides the application of the *Rooker-Feldman* doctrine.")    However, the Court does not find

15 the *Rooker-Feldman* doctrine applicable to this matter.

16      As recently confirmed by the United States Supreme Court, "'the narrow ground'

17 occupied by the [*Rooker-Feldman*] doctrine, . . . 'is confined to cases of the kind from which the

18 doctrine acquired its name: cases brought by state-court losers . . . inviting district court review

19 and rejection of [the state court's] judgments.'"   *Skinner v. Switzer*, 131 S. Ct. 1289, 1297

20 (2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280, 284 (2005)).

21 Therefore, under *Rooker-Feldman*, a plaintiff may not seek reversal of a state court decision by

22 filing a claim in federal district court.  *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003) ("A

party disappointed by a decision of a state court may seek reversal of that decision by appealing

to a higher state court. A party disappointed by a decision of the highest state court in which a

decision may be had may seek reversal of that decision by appealing to the United States

Supreme Court. In neither case may the disappointed party appeal to a federal district court,

even if a federal question is present or if there is diversity of citizenship between the parties.")[2]

   *Rooker-Feldman* does not preclude the pursuit of an "independent claim" in federal

district Court. *Exxon Mobil Corp.*, 544 U.S. at 292-93. *See also Carmona*, 603 F.3d at 1050

("A suit brought in federal district court is a 'de facto appeal' forbidden by *Rooker-Feldman*

when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state

court, and seeks relief from a state court judgment based on that decision.' . . . In contrast, if a

plaintiff 'asserts as a legal wrong an allegedly illegal act or omission by an adverse party,

*Rooker-Feldman* does not bar jurisdiction.'") (quoting *Noel*, 341 F.3d at 1164). This remains

true even where "the 'same or a related question' was earlier aired between the parties in state

court." *Skinner*, 131 S. Ct. at 1297 (quoting *Exxon Mobil Corp.*, 544 U.S. at 292-93) (other

cited sources omitted).

   Again, Judge Stephenson sentenced plaintiff to EHM and reiterated her intention that

---

   2 The Supreme Court has also held the *Rooker-Feldman* doctrine implicated where claims presented are "inextricably intertwined" with a denial in a state proceeding. *Feldman*, 460 U.S. at 483 n. 16. However, as explained by the Ninth Circuit: "Only when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play: Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman*, that federal plaintiff may not, as part of the suit in which the forbidden appeal is brought, seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Noel*, 341 F.3d at 1158 (citing *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991) (a plaintiff barred by *Rooker-Feldman* from seeking "to vacate and to set aside" a state court judgment through a de facto appeal, was forbidden to seek a declaratory judgment invalidating the state court rule on which the state court decision relied because the "request for declaratory relief [was] inextricably intertwined with his request to vacate and to set aside the [state court] judgment."))

01  plaintiff would serve a portion of his sentence on EHM in the review hearing.   Plaintiff is not

02  seeking review and/or reversal of that decision, or of any state court judgment.   *Cf. Dale*, 121

03  F.3d at 626-27 (plaintiff's ADA claim against state bar examiners barred by *Rooker-Feldman*

04  where federal case would require the Court to review a final state court decision).   Plaintiff

05  instead brings forth an independent claim alleging defendants failed to accommodate his

06  disability in violation of federal and state law.   *See, e.g.*, *Manufactured Home Cmtys., Inc. v.*

07  *City of San Jose*, 420 F.3d 1022, 1029-30 (9th Cir. 2005) (finding no forbidden appeal under

08  *Rooker-Feldman* where plaintiff sued a City, not a state court, and challenged the City's

09  interpretation of an ordinance, not the state court's factual or legal conclusion); *Turner v.*

10  *Crawford Square Apts. III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006) ("Turner's complaint raised

11  federal claims, grounded on the [Fair Housing Act (FHA)], not caused by the state-court

12  judgment but instead attributable to defendants' alleged FHA violations that preceded the

13  state-court judgment."; the "overlap" between adjudicated state-court claims and involvement

14  of the same operative facts did not implicate *Rooker-Feldman*).   As discussed above, Judge

15  Stephenson's denial of a request for an interpreter in a hearing does not resolve the issue of

16  defendants' responsibility in relation to accommodation.   *See Duvall*, 260 F.3d at 1141 n.15.

17  For all of these reasons, defendants fail to establish this Court's lack of jurisdiction over

18  plaintiff's claims based on the *Rooker-Feldman* doctrine.

19  C.   Prison Litigation Reform Act

20       Defendants argue plaintiff's damages claim is barred by the Prison Litigation Reform

21  Act (PLRA) given the absence of a physical injury.   The PLRA states, in relevant part:   "No

22  Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). However, as noted by plaintiff, the PLRA applies only to individuals who are detained at the time they file suit. *Talamantes v. Leyva*, 575 F.3d 1021, 1023-24 (9th Cir. 2009) (holding that "'only individuals who, *at the time they seek to file their civil actions*, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are "prisoners" within the definition of 42 U.S.C. § 1997e.'") (emphasis added) (quoting *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000)). Because plaintiff was not detained at the time he filed suit, the PLRA does not apply.

D.    Pre-Claim Notice

WASPC argues plaintiff's claims are subject to dismissal based on his failure to comply with Washington's notice-of-claim statute, RCW 4.96.020. That statute requires the presentation of a claim for damages as "a condition precedent to the commencement of any action" seeking tort damages against a local governmental entity. RCW 4.96.010(1). However, the Court finds no need to consider this argument. First, as discussed below, the Court finds plaintiff's WLAD claim subject to dismissal on summary judgment. It need not, therefore, consider whether plaintiff satisfied the requirements of Washington's notice-of-claim statute in relation to WASPC. Second, the Court finds no basis for concluding the notice-of-claim statute applies to plaintiff's ADA claims. *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, 138 (1988) (state claims filing statute should not be applied to federal civil rights claims under 42 U.S.C. § 1983); *Payne v. Arpaio*, No. CV09-1195-PHX-NVW, 2009 U.S. Dist. LEXIS 110553 at *34 (D. Ariz. Nov. 4, 2009) (Arizona's notice-of-claim statute does not apply to federal claims); *Tout v. Erie Cmty. College*, 923 F. Supp. 13, 15 (W.D.N.Y. 1995) (finding

01 no basis why state notice-of-claim statute should apply to Title VII claim); *Finley v. Giacobbe*,

02 827 F. Supp. 215, 219 (S.D.N.Y. 1993) (declining to apply New York's notice-of-claim statute

03 to ADA claims). Accordingly, WASPC's pre-claim notice argument provides no basis for

04 dismissal on summary judgment.

05 E.    Declaratory Relief

06         Defendants maintain the declaratory relief sought by plaintiff is not available as he is no

07 longer subject to his court sentence. However, in so doing, defendants rely on a case finding a

08 prisoner's request for *injunctive* relief moot following his transfer to another institution. *See*

09 *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). Defendants cite no support for the

10 conclusion that plaintiff would not be entitled to declaratory relief given that he is no longer

11 subject to his sentence. Also, the Court finds King County's assertion that plaintiff failed to

12 request a declaration with regard to any specific policy unpersuasive given the absence of any

13 information whatsoever as to King County's disability accommodation policies. Finally,

14 plaintiff does request declaratory relief in the form of a declaration that defendants violated his

15 rights. (Dkt. 10 at 6.) The Court, therefore, finds no basis for concluding at this time that

16 plaintiff's request for declaratory relief is moot.

17 F.    Americans with Disabilities Act

18         Plaintiff sues King County under Title II of the ADA, which holds that "no qualified

19 individual with a disability shall, by reason of such disability, be excluded from participation in

20 or be denied the benefits of the services, programs, or activities of a public entity, or be

21 subjected to discrimination by any such entity." 42 U.S.C. § 12132. He sues WASPC under

22 Title III of the ADA, which prohibits discrimination "on the basis of disability in the full and

01  equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

02  any place of public accommodation by any person who owns, leases (or leases to), or operates a

03  place of public accommodation."  42 U.S.C. § 12182(a).

04      Plaintiff seeks partial summary judgment based on his establishment of a prima facie

05  case under the ADA, while defendants argue plaintiff's ADA claims should be dismissed on

06  summary judgment.  Because it appears that plaintiff's claims against both defendants are

07  properly analyzed under Title II of the ADA, the Court first briefly addresses plaintiff's

08  presentation of a Title III claim against WASPC.

09      1.    Title III of the ADA:

10      Title III of the ADA prohibits discrimination on the basis of disability in places of

11  public accommodation.  42 U.S.C. § 12182.  "The phrase 'public accommodation' is defined

12  in terms of 12 extensive categories," *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676 (2001),

13  including places of lodging, food or drink establishments, places of exhibition, entertainment,

14  public gathering, public display/collection, recreation, exercise, or education, sales, rental, and

15  service establishments, public transportation stations, and social service center establishments,

16  "if the operations of such entities affect commerce[.]"  42 U.S.C. § 12181(7).

17      Plaintiff fails to establish that WASPC falls into any of the categories subject to Title III

18  of the ADA.  Instead, as it concedes in its motion for summary judgment (Dkt. 43 at 9-11),

19  WASPC appears to be properly considered as a local governmental entity, or "public entity",

20  under the ADA.

21      The ADA defines "public entity" as including "any State or local government[]" and

22  "any department, agency, special purpose district, or other instrumentality of a State or States or

01 local government[.]" 42 U.S.C. § 12131(a). A public entity is broadly construed as including

02 "'every possible agency of state or local government.'" *Lee v. City of Los Angeles*, 250 F.3d

03 668, 691 (9th Cir. 2001) (quoted sources omitted) (noting that both state prisons and local law

04 enforcement agencies are public entities under the ADA). WASPC, as addressed in the

05 portion of the Revised Code of Washington governing "Counties", is "declared to be a

06 combination of units of local government[.]" RCW § 36.28A.010. As such, the Court

07 concludes that an ADA claim against WASPC would fall under Title II, not Title III.[3]

08 Given the above, plaintiff necessarily fails to establish his entitlement to partial

09 summary judgment against WASPC under Title III of the ADA. However, as discussed

10 further below, WASPC appears to be a proper party in relation to plaintiff's Title II claim.

11 Accordingly, the Court concludes that, upon provision of an amended complaint identifying the

12 proper ADA title in relation to WASPC, plaintiff's claims against this defendant should

13 proceed.

14     2.  <u>Title II of the ADA</u>:

15 Title II of the ADA prohibits a public entity from discriminating against a qualified

16 individual with a disability on the basis of disability. 42 U.S.C. § 12132. In order to

17 demonstrate a Title II violation, plaintiff must show: (1) he is a "qualified individual with a

18 disability"; (2) he was excluded from participation in or denied the benefits of a public entity's

19 services, programs, or activities, or was otherwise discriminated against by the public entity;

20 and (3) the exclusion, denial of benefits, or discrimination was by reason of his disability.

21

22       3 Additionally, as noted by WASPC, a Title III claim would allow for only injunctive relief, a remedy not sought by plaintiff in this case. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1120 & n.6 (9th Cir. 2000).

01  *Duvall*, 260 F.3d at 1135 (citing *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114

02  F.3d 976, 978 (9th Cir. 1997)).

03      A "qualified individual with a disability" is defined as "an individual with a disability

04  who, with or without reasonable modifications to rules, policies, or practices, the removal of

05  architectural, communication, or transportation barriers, or the provision of auxiliary aids and

06  services, meets the essential eligibility requirements for the receipt of services or the

07  participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  In

08  considering the services, programs, or activities at issue, "[t]he ADA's broad language brings

09  within its scope '"anything a public entity does[,]"'" *Lee*, 250 F.3d at 691 (quoting

10  *Pennsylvania Dep't of Corr. v. Yeskey*, 118 F.3d 168, 171 & n.5 (3d Cir. 1997), *aff'd* 524 U.S.

11  206 (1998) (quoting 28 C.F.R. Pt. 35, App. A, preamble to ADA regulations)), and "all of the

12  operations of a qualifying local government."  *Thompson v. Davis*, 295 F.3d 890, 898-99 (9th

13  Cir. 2002) (internal quotation marks omitted) (quoting *Bay Area Addiction Research and*

14  *Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 731 (9th Cir. 1999)).

15      Plaintiff is a deaf individual who was sentenced to EHM with alcohol monitoring in

16  King County District Court.   The evidence presented establishes that King County, through the

17  CCD of the DAJD, provides EHM and in some limited circumstances employs the use of a

18  Sobrieter to conduct alcohol monitoring.[4]  (Dkt. 40, ¶¶ 3-5, 10-12.)  The evidence further

19  establishes that WASPC facilitates the provision of EHM and alcohol monitoring to some King

20  County defendants.   (Dkt. 49, ¶¶ 4-7.)   The Court, accordingly, finds the evidence sufficient

21

22      [4] The Court discusses below King County's contention that it does not provide to anyone
    alcohol monitoring on EHM.

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -18

01 to support the conclusion that plaintiff is a qualified individual with a disability under Title II of

02 the ADA. 42 U.S.C. § 12131(2). *See also Yeskey*, 524 U.S. at 210-12 (finding Title II of the

03 ADA applied to state prisons; disabled prisoners qualified to receive benefits and services of

04 state prisons if they meet eligibility requirements, despite the fact that participation may not

05 always be voluntary); *Thompson*, 295 F.3d at 896 (plaintiffs alleged substantially limiting

06 impairments and statutory eligibility for parole; finding "parole proceedings constitute an

07 activity of a public entity that falls within the ADA's reach.")

08      Plaintiff maintains satisfaction of the remaining elements of a Title II claim in that he

09 was excluded from participation in EHM by reason of his disability through a denial of

10 reasonable accommodations. Federal regulations implementing Title II require public entities

11 to "make reasonable modifications in policies, practices, or procedures when the modifications

12 are necessary to avoid discrimination on the basis of disability, unless the public entity can

13 demonstrate that making the modifications would fundamentally alter the nature of the service,

14 program, or activity." 28 C.F.R. § 35.130(b)(7). *Accord Memmer v. Marin County Courts*,

15 169 F.3d 630, 633 (9th Cir. 1999).[5] The regulations further provide:

16      (a)(1) A public entity shall take appropriate steps to ensure that communications
        with applicants, participants, members of the public, and companions with
17      disabilities are as effective as communications with others.
             . . .
18
19      (b)(1) A public entity shall furnish appropriate auxiliary aids and services where
        necessary to afford individuals with disabilities, including applicants,
20      participants, companions, and members of the public, an equal opportunity to

21      5 "Although Title II of the ADA uses the term 'reasonable modification,' rather than
'reasonable accommodation,' these terms create identical standards[]" and are used
22 "'interchangeably.'" *McGary v. City of Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004) (quoting
*Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n.26 (9th Cir. 1999)).

01           participate in, and enjoy the benefits of, a service, program, or activity of a
          public entity.

02

03 28 C.F.R. § 35.160.  Additionally, while the "type of auxiliary aid or service necessary to

04 ensure effective communication will vary[,]" a public entity is directed to give "primary

05 consideration to the requests of individuals with disabilities."  *Id.* at § 35.160(b)(2).

06       In pursuing a reasonable accommodation claim, plaintiff bears the burden of

07 establishing "'the existence of a reasonable accommodation' that would enable him to

08 participate in the program, service or activity at issue."  *Pierce v. County of Orange*, 526 F.3d

09 1190, 1217 (9th Cir. 2008) (quoting *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1046

10 (9th Cir. 1999)).  "The public entity may then rebut this by showing that the requested

11 accommodation would require a fundamental alteration or would produce an undue burden."

12 *Id.* (citing 28 C.F.R. § 35.150(a)(3)).  Plaintiff also bears the burden of showing that

13 accommodations offered by the public entity "were not reasonable, and that he was unable to

14 participate equally in the [service, program, or activity] at issue."  *Duvall*, 260 F.3d at 1137

15 (citing *Memmer*, 169 F.3d at 633-34).  The question of reasonableness "always requires a

16 fact-specific, contact-specific inquiry."  *Pierce*, 526 F.3d at 1217.

17       Plaintiff avers his identification of reasonable accommodations and satisfaction of his

18 obligation to show that the "family assistance" plan offered by WASPC would not work.  He

19 argues King County may not shield itself from liability by its reliance on WASPC to provide

20 EHM services, pointing to the regulations implementing Title II as holding that a public entity

21 may not deny service to a qualified individual with a disability through its contractual or other

22 arrangements.  28 C.F.R. § 35.130(b).  Plaintiff also maintains WASPC denied him use of its

01  services and failed to make or even consider any modifications to its practices and procedures

02  to accommodate his disability.

03      Noting plaintiff seeks to recover monetary damages, King County observes that

04  plaintiff must, therefore, prove intentional discrimination under a "deliberate indifference"

05  standard. *Duvall*, 260 F.3d at 1138-39. "Deliberate indifference requires both knowledge

06  that a harm to a federally protected right is substantially likely, and a failure to act upon that the

07  likelihood." *Id.* at 1139 (citing, *inter alia*, *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

08  King County further states that plaintiff was required to identify "specific reasonable" and

09  "necessary" accommodations which the County then failed to provide. *Memmer*, 169 F.3d at

10  633.

11      King County maintains plaintiff failed to make any attempt to talk to County officials

12  about EHM, let alone identifying specific reasonable and necessary accommodations the

13  County failed to provide. King County further avers that, while plaintiff's deafness would not

14  have prevented him from receiving EHM had he asked, it would not have been able to provide

15  EHM with alcohol monitoring because it does not provide that service to anyone. As

16  described above, King County states that defendants and probationers ordered to have alcohol

17  monitoring while on EHM "must independently find their own method of getting the alcohol

18  monitoring accomplished" and that this typically happens through the assistance of a probation

19  officer. (Dkt. 40, ¶14.) King County points to Judge Stephenson's September 2007 order as

20  demonstrating her expectation plaintiff would take care of this aspect of his EHM. (Dkt. 39,

21  Ex. 5.)

22      King County also asserts plaintiff's failure to mitigate his damages, stating he did no

more than see or hear about the actress Lindsay Lohan on TV and looked at a few internet sites (*see* Dkt. 39 at 43-59), and failed to move for reconsideration of the sentencing order providing for EHM. King County adds that it did provide plaintiff with auxiliary aids and services, including authorizations for an interpreter for Victim Information Panel sessions, the translation of court hearings into American Sign Language, and special housing and a TTY unit during plaintiff's incarceration. (*See* Dkts. 39 & 41.)[6]

WASPC contends plaintiff was not denied access to EHM, stating it invited plaintiff to participate in the program and made multiple reasonable efforts at accommodation, including reduced pricing, the allowance for someone to assist plaintiff with the alcohol monitoring, the offer to schedule the monitoring at two set times during the day, and contacting the vendor to inquire into further accommodation. (Dkt. 44, ¶16.) WASPC avers plaintiff's deafness had nothing to do with whether he could participate in EHM and that only plaintiff's inability to get another individual to help him with the alcohol monitoring operator calls prevented his participation. Like King County, WASPC avers plaintiff's failure to identify any specific reasonable and necessary alternative accommodations WASPC then failed to provide. WASPC likewise points to plaintiff's failure to take any action, such as appealing his sentence, requesting re-sentencing, filing a grievance, or requesting release. It also points to the third party vendors performing the EHM and alcohol monitoring services as the entities controlling the technical requirements for participation.

WASPC posits that it was not aware of any other "available technology options" for

6 King County additionally avers that plaintiff inappropriately raises a new theory of its liability through its reliance on WASPC to provide EHM. However, the Court finds plaintiff's argument appropriate. Nor does the Court find, contrary to King County's suggestion, any problem with plaintiff's reliance on applicable regulations in support of his claim.

01  plaintiff. (Dkt. 64 at 12.) It challenges plaintiff's contention that he gave information

02  regarding other technology as hearsay, fabrication, and without foundation, notes the absence

03  of any admissible evidence or expert offered by plaintiff to testify as to alternative technologies,

04  and avers that "[t]he only relevant evidence before the court is that WASPC's contracted

05  vendor had no such product available in 2007 and did not have anything similar until 2010."

06  (*Id*. (citing Dkt. 45, ¶10 (WASPC vendor did not provide alcohol testing through the skin until

07  2010; adding that such technology would not have resolved plaintiff's issue as, after a notice is

08  sent, "some sort of confirmation communication would be necessary."))

09         In considering the arguments of the parties, the Court first addresses the involvement of

10  both King County and WASPC in relation to plaintiff's Title II claim. As stated above, it

11  appears that both defendants are properly considered as public entities under Title II. Further,

12  while the Court finds the briefing and materials presented by the parties insufficient to allow for

13  a complete understanding of the relationship between the defendants and the respective roles

14  played in the provision of EHM and/or alcohol monitoring, it is clear both defendants provide

15  relevant services, programs, and/or activities relevant to plaintiff's claim. The Court,

16  therefore, considers plaintiff's Title II denial of reasonable accommodation claim in relation to

17  both King County and WASPC.

18         Defendants fail to support their entitlement to summary judgment based on plaintiff's

19  alleged failure to request "specific reasonable" and "necessary" accommodations which

20  defendants then failed to provide. *Memmer*, 169 F.3d at 633. Plaintiff proffers declarations

21  supporting the contention that he, individually and/or through his mother, requested various

22  forms of accommodation from WASPC, such as video conferencing, text messaging, or a

SCRAM bracelet.   (Dkt. 49 at 2-3; Dkt. 62-1 at 2-3.)   WASPC and McMillan deny plaintiff or

his mother made any such requests.   (Dkt. 44.)   Accordingly, this issue presents a genuine

issue of material fact that may not be decided on summary judgment.

Moreover, it is undisputed both that WASPC alerted King County District Court by fax

as to plaintiff's inability to participate in EHM with alcohol monitoring due to his deafness

(Dkt. 44, Ex. 3 ("William Kral is deaf and will not be able to be put on EHM with BAC for that

reason.")), and that plaintiff requested accommodation through the assistance of interpreters in

the September 2007 hearing.   As stated above, the Judge's refusal of plaintiff's request does

not absolve a public entity of its responsibilities under the ADA.   *Duvall*, 260 F.3d at 1141

n.15.   Further, "[w]hen the plaintiff has alerted the public entity to his need for accommodation

(or where the need for accommodation is obvious, or required by statute or regulation), the

public entity is on notice that an accommodation is required, and the plaintiff has satisfied the

first element of the deliberate indifference test."   *Id.* at 1139.   *See also Robertson v. Las

Animas County Sheriff's Dep't*, 500 F.3d 1185, 1194-95 (10th Cir. 2007) ("[A] public entity is

on notice that an individual needs an accommodation when it knows that an individual requires

one, either because that need is obvious or because the individual requests the

accommodation."); *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) (while

reasonable accommodation is typically triggered by a request because a disability and need for

accommodation is not always known, "'sometimes the [person]'s need for an accommodation

will be obvious; and in such cases, different rules may apply.'") (quoted source omitted).

Plaintiff's request for the assistance of an interpreter to assist with EHM and alcohol monitoring

in a King County District Court hearing provides support for the contention that he alerted the

01 public entity to his need for accommodation and/or that that need was obvious.   At the least,

02 plaintiff's request and WASPC's August 2007 fax raise a question as to whether defendants can

03 reasonably maintain they were not on notice as to plaintiff's need for accommodation, an issue

04 the Court concludes would benefit from further development.

05        There also remains a question as to whether plaintiff could reasonably have been

06 expected to contact a separate King County entity or representative in relation to EHM and

07 alcohol monitoring given that he had otherwise dealt exclusively with WASPC, at their

08 initiation, as to this aspect of his sentence.   Although the relationship and roles of the

09 defendants remain unclear, as plaintiff observes, the prohibition on discrimination extends not

10 only to a public entity's direct actions, but also through its "contractual, licensing, or other

11 arrangements[.]" 28 C.F.R. § 35.130(b)(1).   *See also generally Armstrong v. Schwarzenegger*,

12 622 F.3d 1058, 1062-63, 1065-68 (9th Cir. 2010) (rejecting arguments challenging §

13 35.130(b)(1) and affirming district court's decision finding State "responsible for providing

14 reasonable accommodations to the disabled prisoners and parolees that they house in county

15 jails.")   Therefore, as argued by plaintiff, King County would not be shielded from liability to

16 the extent it utilized WASPC to provide EHM with alcohol monitoring through some

17 contractual or other arrangement.   Similarly, WASPC would not be shielded from liability to

18 the extent it relied on its vendors' services through some type of contractual or other

19 arrangement.   Additionally, public entities are liable under principles of respondeat superior

20 for their employees' violations of the ADA.   *Duvall*, 260 F.3d at 1141.

21        The Court further finds other outstanding issues as to accommodation.   "Reasonable

22 accommodation does not require an organization to make fundamental or substantial alterations

01  to its programs." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010) (cited sources

02  omitted). "Reasonableness 'depends on the individual circumstances of each case, and

03  requires a fact-specific, individualized analysis of the disabled individual's circumstances and

04  the accommodations that might allow him to [enjoy meaningful access to the program.]'" *Id.*

05  (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (internal citation and quotation

06  marks omitted). "An accommodation is reasonable if it is 'reasonable on its face, i.e.,

07  ordinarily or in the run of cases.'" *Id.* (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391,

08  402 (2002)). Here, there remain questions of fact as to the reasonableness of plaintiff's

09  requested accommodations.[7]

10      In addition, a public entity must "undertake a fact-specific investigation to determine

11  what constitutes a reasonable accommodation[.]" *Duvall*, 260 F.3d at 1136. "'[M]ere

12  speculation that a suggested accommodation is not feasible falls short of the reasonable

13  accommodation requirement; the Acts create a duty to gather sufficient information from the

14  [disabled individual] and qualified experts as needed to determine what accommodations are

---

15      7 "Although neither the Rehabilitation Act nor Title II of the ADA, on its face, requires the

16  provision of sign-language interpreters as an accommodation for hearing-impaired individuals, the regulations promulgated by the Attorney General under Title II list sign-language interpreters and

17  videotext display as among the accommodations required, in appropriate circumstances, by the ADA." *Duvall*, 260 F.3d at 1134-45 n.7 (citing 28 C.F.R. § 35.104(1) (also listing numerous other types of

18  auxiliary aids and services)). *See also* 42 U.S.C. § 12103(1) (describing "auxiliary aids and services" as including: "(A) qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments; (B) qualified readers, taped texts, or other effective

19  methods of making visually delivered materials available to individuals with visual impairments; (C) acquisition or modification of equipment or devices; and (D) other similar services and actions.")

20  The Court notes that none of the parties in this case present any explanation behind Judge Stephenson's denial of plaintiff's requested accommodation. *Cf. Duvall*, 260 F.3d at 1141 n.15 (judge never

21  suggested he would not permit use of requested accommodation if it were available and, in fact, said "despite its unavailability in the county," plaintiff was free to provide the requested service himself if

22  possible; "Thus, it seems clear that Judge Kruse had no objection to the use of videotext display in his courtroom.")

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -26

01 necessary.'" *Id.* (quoting *Wong v. Regents of the Univ. Cal.*, 192 F.3d 807, 818 (9th Cir. 1999)

02 (all but first alteration in original; citation and internal quotation marks omitted).

03    In this case, King County, considered separately from WASPC, admittedly did not

04 undertake any investigation into accommodation to allow plaintiff to serve the EHM portion of

05 his sentence.[8] The Court finds unpersuasive King County's argument that it could not have

06 discriminated against plaintiff given that it does not provide alcohol monitoring to anyone.

07 First, King County concedes its use of the Sobrieter, an alcohol monitoring device, in certain

08 circumstances, albeit not in relation to EHM. (Dkt. 40, ¶¶ 10-12.)[9] Second, King County's

09 argument "effectively eliminates the duty of a [public entity] to provide auxiliary aids and

10 services[]" given that, "[b]y its very definition, an auxiliary aid or service is an additional and

11 different service that [a public entity] must offer the disabled." *Arizona v. Harkins Amusement*

12 *Enterprises, Inc.*, 603 F.3d 666, 672 (9th Cir. 2010) (rejecting similar reasoning in a Title III

13 case; adding: "For example, a courthouse that was accessible only by steps could not avoid

14 ADA liability by arguing that everyone--including the wheelchair bound--has equal access to

15 the steps. And an office building could not avoid having to put Braille numbering on the buttons

16 in its elevator by arguing that everyone--including the blind--has equal access to the written

17 text."; explaining that, while other decisions "support the proposition that the content of a good

18 or service need not be altered under the ADA, neither of those decisions turn on whether a place

19    8 The accommodations provided in relation to plaintiff's period of confinement are not relevant to the issue of accommodation in relation to the EHM portion of the sentence.

20

21    9 The Court does not take a position that the use of a Sobrieter would have served as a reasonable accommodation for plaintiff. However, it notes that the fact that this technology would not have been random does not appear to eliminate it as a possibility given that it is not clear the sentence required random testing, and given that WASPC offered scheduled testing through its vendor as an accommodation.

22

of public accommodation must provide an auxiliary aid or service that falls within the mandate of § 12182(b)(2)(A)(iii).")   While it may well be appropriate to impose the obligation of finding methods to accomplish alcohol monitoring on the typical offender, a disabled offender's need for an accommodation imposes obligations on a public entity under the ADA.

WASPC does provide evidence supporting its offer of accommodation through the allowance of scheduled alcohol monitoring phone calls with third party assistance.   A review of the applicable regulations raises a question as to whether requiring plaintiff to provide his own interpreter constitutes a reasonable accommodation.   28 C.F.R. § 35.160(c)(1) ("A public entity shall not require an individual with a disability to bring another individual to interpret for him or her.")[10]   In any event, the question of whether a public entity has provided reasonable accommodation is "ordinarily a question of fact."   *Fuller v. Frank*, 916 F.2d 558, 562 n.6 (9th Cir. 1990) (citing *Reynolds v. Brock*, 815 F.2d 571, 575 (9th Cir. 1987)).   *Accord Crowder v. Kitagawa*, 81 F.3d 1480, 1485-86 (9th Cir. 1996) ("[W]e have held that the determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry.") (citing *Chalk v. United States District Court*, 840 F.2d 701, 705 (9th Cir. 1988)).   Here, WASPC maintains Godejohn inexplicably declined to assist plaintiff (Dkt. 44, ¶13), while Godejohn claims she was unable to assist plaintiff due to her need to work (Dkt. 62-1 at 2).   Plaintiff also points to the fact that the twice daily scheduled phone calls could come fifteen minutes before to forty-five minutes after the scheduled time.   (Dkt. 44, Ex. 1 at 2-3.)

---

10 *See also* 28 C.F.R. § 35.160(c)(2) ("A public entity shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except--(i) In an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or (ii) Where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances.")

01 The Court finds the reasonableness of the accommodations offered by WASPC a question of

02 fact inappropriate for determination on summary judgment.

03     Similarly, the Court finds inappropriate for resolution on summary judgment the

04 question of whether WASPC satisfied its duty to "gather sufficient information" into necessary

05 accommodations through McMillan's phone call to WASPC to inquire into alternatives for

06 plaintiff. *Duvall*, 260 F.3d at 1136-37. Certainly, the mere assertion it was unaware of

07 another option for plaintiff does not satisfy the obligation to investigate. *Id*. ("Although the

08 County defendants were not aware of a court reporting service that provided real-time

09 transcription when Duvall allegedly made his request, the ADA imposes an obligation to

10 investigate whether a requested accommodation is reasonable.")

11     The Court also rejects defendants' reliance on plaintiff's other alleged failures at

12 mitigation. Again, plaintiff's issue did not lie with the sentence to EHM with alcohol

13 monitoring. He, rather, sought accommodation so that he could serve the sentence issued.

14 Finally, defendants do not sufficiently support the assertion that the discretionary nature of the

15 decision to allow plaintiff to serve a portion of his sentence on EHM alters the above analysis.

16 Under the ADA, the services, activities, and programs of a public entity must be offered on

17 nondiscriminatory terms, whether mandatory or voluntary. *Robertson*, 500 F.3d at 1199

18 (rejecting argument that defendants did not discriminate against hearing impaired detainee

19 because his presence at a probable cause hearing was not required) (citing *Yeskey*, 524 U.S. at

20 210).

21     In sum, the Court finds numerous outstanding issues and factual disputes preventing

22 resolution of plaintiff's Title II ADA claim against defendants on summary judgment. It

remains to be determined whether plaintiff establishes he was excluded from defendants' services, programs, or activities, or otherwise discriminated against by defendants, and whether such exclusion, denial, or discrimination was by reason of his disability. *Duvall*, 260 F.3d at 1135. It further remains to be determined whether plaintiff establishes defendants' deliberate indifference through knowledge that a harm to plaintiff was substantially likely and the failure to act on that harm. *Id*. at 1139. *See also Hamamoto*, 620 F.3d at 1098-99 ("Hawaii DOE acted with deliberate indifference if it knew that Michelle and Natalie needed autism-specific services in order to enjoy meaningful access to the benefits of a public education and failed to investigate whether those services were available as a reasonable accommodation.") As such, the Court denies all pending motions seeking dismissal of plaintiff's ADA claim on summary judgment.

G.    Washington's Law Against Discrimination

Plaintiff alleges defendants operated places of public accommodation as defined by the WLAD, and violated the WLAD by failing to provide him with an interpreter and other reasonable accommodations necessary to allow him to benefit equally from defendants' services. (Dkt. 10 at 5-6 (citing RCW 49.60.215 and RCW 46.60.030).) He moves for summary judgment based on his establishment of a prima facie case of discrimination under the WLAD. Defendants also move for dismissal of plaintiff's WLAD claims on summary judgment.

The WLAD prohibits discrimination on the basis "of any sensory, mental, or physical disability[,]" and provides for "[t]he right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage,

01 or amusement[.]"  RCW 49.60.030(1).  A place of "public resort, accommodation,

02 assemblage, or amusement" is defined as including, but not limited to:

03       [A]ny place, licensed or unlicensed, kept for gain, hire, or reward, or where
      charges are made for admission, service, occupancy, or use of any property or
04       facilities, whether conducted for the entertainment, housing, or lodging of
      transient guests, or for the benefit, use, or accommodation of those seeking
05       health, recreation, or rest, or for the burial or other disposition of human
      remains, or for the sale of goods, merchandise, services, or personal property, or
06       for the rendering of personal services, or for public conveyance or transportation
      on land, water, or in the air, including the stations and terminals thereof and the
07       garaging of vehicles, or where food or beverages of any kind are sold for
      consumption on the premises, or where public amusement, entertainment,
08       sports, or recreation of any kind is offered with or without charge, or where
      medical service or care is made available, or where the public gathers,
09       congregates, or assembles for amusement, recreation, or public purposes, or
      public halls, public elevators, and public washrooms of buildings and structures
10       occupied by two or more tenants, or by the owner and one or more tenants, or
      any public library or educational institution, or schools of special instruction, or
11       nursery schools, or day care centers or children's camps[.]

12 RCW 49.060.040(2).  Finally, under RCW 46.60.215, an unfair practice in places of public

13 resort, accommodation, assemblage, or amusement is defined as follows:

14       It shall be an unfair practice for any person or the person's agent or employee to
      commit an act which directly or indirectly results in any distinction, restriction,
15       or discrimination, or the requiring of any person to pay a larger sum than the
      uniform rates charged other persons, or the refusing or withholding from any
16       person the admission, patronage, custom, presence, frequenting, dwelling,
      staying, or lodging in any place of public resort, accommodation, assemblage, or
17       amusement, except for conditions and limitations established by law and
      applicable to all persons, regardless of . . . the presence of any sensory, mental,
18       or physical disability[.]

19 RCW 49.60.215(1).

20       A prima facie case of discrimination under RCW 49.60.215 requires a plaintiff to show:

21       (1) they have a disability recognized under the statute; (2) the defendant's
      business or establishment is a place of public accommodation; (3) they were
22       discriminated against by receiving treatment that was not comparable to the

01  level of designated services provided to individuals without disabilities by or at
    the place of public accommodation; and, (4) the disability was a substantial
02  factor causing the discrimination.

03  *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 637, 911 P.2d 1319 (1996).   In this case, there

04  is a dispute as to whether defendants operate places of public accommodation under the

05  WLAD.

06      Plaintiff states that WASPC "operates a place that makes a charge for rendering

07  personal services (electronic home monitoring)[,]" while "King County operates many places

08  (including its district courts and its jails where people gather for public purposes, one of the

09  definitions of public accommodation set forth in RCW 49.60.040(2).[)]"   (Dkt. 42 at 7.)

10  However, as argued by defendants, the Court finds no basis for concluding that plaintiff

11  satisfies the requirement to establish that defendants – in relation to the specific claim at issue in

12  this case – operate places of public accommodation subject to the WLAD.

13      As observed by defendants, "RCW 49.60.215 is Washington's analogue to Title III[]"

14  of the ADA, prohibiting "discrimination against . . . disabled individuals in public

15  accommodations."   *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1118 (9th Cir.

16  2000).   Public accommodations under Title III of the ADA "are actual, physical places where

17  goods or services are open to the public, and places where the public gets those goods or

18  services."   *Id.* at 1114.   The Washington Supreme Court has found it "very clear that the reach

19  of the [WLAD's definition of public accommodation] extends to places and facilities, not

20  services." *Fell*, 128 Wn.2d at 638 & n.24 (noting Washington courts have found places of

21  accommodation to include restaurants, parks and public resorts, movie theaters, a weight

22  control clinic, and barbershops).

01        While plaintiff notes King County's operation of courts and jails, he does not allege he

02    was subjected to discrimination in such places, or any other actual, physical place or facility

03    operated by King County.   Nor does he identify a physical place in which WASPC denied him

04    accommodation.   Instead, plaintiff alleges the discriminatory denial of a service, or some other

05    program or activity; namely, the provision of EHM.   As stated above, the WLAD does not

06    extend to services.   *Id*.   The Court finds no basis for concluding that the denial of EHM by

07    defendants can be considered as an unfair practice in a place of public accommodation as

08    defined under RCW 49.60.215.   *See, e.g.*, *Weyer*, 198 F.3d at 1119 (finding "an administrator

09    of an employer-provided disability insurance fringe benefit is not a 'place of public

10    accommodation' under RCW 49.60.215."); *Fell*, 128 Wn.2d at 638-39 (finding plaintiff's

11    argument that the "entire service area" of the Spokane Transit Authority was a place of

12    accommodation not supported by the WLAD's definition of public accommodation, which

13    would include "park and ride lots, bus shelters, transit centers and buses on scheduled fixed

14    routes[]" and "extends to places and facilities, not services.")

15        Also, the service at issue was necessarily to be provided in plaintiff's home.   As this

16    Court has previously found, "the WLAD was not intended to equate 'place of public

17    accommodation' with a private person's home." *Patrice v. Murphy*, 43 F. Supp. 2d 1156,

18    1162 (W.D. Wash. 1999) ("The use of the word 'public' was clearly meant to outlaw

19    discrimination by those who make money serving the masses. The statute does not intrude into

20    the purely private sphere. Since plaintiff's house cannot be considered a place of public

21    accommodation, RCW 49.60.030(1)(b) does not apply.")

22        Finally, plaintiff fails to support his claim even if more broadly construed as identifying

01 King County courts and/or correctional facilities as the relevant places of accommodation.

02 First, plaintiff's claim cannot be reasonably read to support the conclusion that he was denied

03 accommodation in the physical place of King County District Court.   Second, even if

04 plaintiff's claim could be construed as asserting a denial of accommodation in the physical

05 place where he served the final months of his sentence, he provides an absence of any authority

06 for the conclusion that correctional facilities are considered places of public accommodation

07 under the WLAD.   As noted by King County, courts have found to the contrary.  *See*, *e.g.*,

08 *Kral v. Benton County*, No. CV-09-5014-RHW, 2009 U.S. Dist. LEXIS 105165 at *12-13 (E.

09 D. Wash. Nov. 10, 2009) ("The Court finds that extending RCW 49.60.215 to courthouses and

10 jails would be a significant and wholly unsupported leap from the types of facilities identified in

11 the case law to date."); *Brown v. King County Dep't of Adult Corrections*, No. C97-1909W,

12 1998 U.S. Dist. LEXIS 20152 at *16-17 (W.D. Wash. Dec. 9, 1998) (stating that the WLAD's

13 statutory definition "strongly suggests that a 'place of public . . . accommodation' does not

14 encompass a prison environment[,]" and finding no basis presented to conclude a county jail

15 constituted "a place of 'public accommodation' under R.C.W. § 49.60.215").[11]

16      In sum, the Court concludes plaintiff fails to make a sufficient showing on an essential

17 element of his case with respect to which he has the burden of proof.   Defendants are,

---

18     11  Courts have also found Title III of the ADA inapplicable to correctional facilities.  *See*, *e.g.*,

19 *Johnson v. Fed. Bureau of Prisons*, No. 08-6017-HA, 2011 U.S. Dist. LEXIS 4539 at*6 (D. Or. Jan. 18, 2011) (finding ADA inapplicable given that "Title III does not include the Bureau of Prisons, or any other federal entity, among its exhaustive list of public accommodations operated by private entities

20 within the coverage of that Title."); *Edison v. Douberley*, No. 2:05-cv-307-FtM-2 9SPC, 2008 U.S. Dist. LEXIS 68152 at *12-13 (M.D. Fla. Sept. 9, 2008) (finding the categories regarded as places of public

21 accommodation under Title III "do not arguably encompass a penal facility.")   The Supreme Court has, however, held that prisons fall squarely within the statutory definition of "public entity" as considered in

22 relation to Title II of the ADA.  *Yeskey*, 524 U.S. at 209-12; *accord Armstrong v. Wilson*, 124 F.3d 1019, 1022-25 (9th Cir. 1997).

01 therefore, entitled to dismissal of plaintiff's WLAD claim on summary judgment.

02 <u>CONCLUSION</u>

03      For the reasons explained above, the Court GRANTS in part and DENIES in part the

04 motions for summary judgment filed by King County and WASPC, and DENIES plaintiff's

05 motion for partial summary judgment. Plaintiff's claim under the WLAD is hereby

06 DISMISSED, while plaintiff's ADA claim may not be resolved on summary judgment.

07 Plaintiff is hereby ORDERED to submit, within **fifteen (15) days** of the date of this Order, an

08 amended complaint identifying the proper ADA title – Title II – in relation to his claims against

09 WASPC.

10      DATED this <u>6th</u> day of March, 2012.

11

12                                      Mary Alice Theiler

13                                      United States Magistrate Judge

14

15

16

17

18

19

20

21

22